UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM NELSON,<br><br>    Plaintiff,<br><br> v.<br><br>MARY MADDEN; KAYLA AYERS; CLINT P JOHNSON; JUDGE SUSAN ADAMS; PIERCE COUNTY; PIERCE COUNTY SUPERIOR COURT,<br><br>    Defendants. | Case No. 3:25-cv-05490-TMC<br><br>ORDER GRANTING TEMPORARY RESTRAINING ORDER |

### I.   INTRODUCTION

Pro se Plaintiff William Nelson has filed an ex parte emergency motion for a temporary restraining order ("TRO") preventing the Defendants—Mary Madden, Clerk of Court, Pierce County Superior Court; Kayla Ayers, Disability Coordinator, Pierce County Superior Court; Clint P. Johnson, Commissioner, Pierce County Superior Court; Judge Susan Adams, Pierce County Superior Court; Pierce County Superior Court; and Pierce County—from holding a hearing scheduled for June 4, 2025 on a dispositive motion in state court civil proceedings. Dkt. 2 at 1, 2–3, 4. Mr. Nelson contends that the Defendants have denied him reasonable accommodations under the Americans with Disabilities Act ("ADA") and that requiring him to go forward with the hearing will violate his rights under the ADA and the Due Process Clause of

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 1

the United States Constitution and cause him irreparable harm. Because Mr. Nelson has shown serious questions going to the merits of his claims, a potential for irreparable harm, and that the balance of hardships tips in his favor, the Court grants modest, temporary injunctive relief to preserve the status quo: as set forth in the conclusion of this Order, Defendants are ENJOINED from proceeding with the scheduled state-court hearing until both parties can be fully heard on the merits of this motion.

Mr. Nelson further requests that this Court require that Pierce County Superior Court "convene an ADA-compliant interactive process meeting"; "provide alternative filing and hearing participation accommodations accounting for Petitioner's cognitive disabilities"; and "prohibit Commissioner Johnson from conducting any hearing in that matter until the court has honored the required stay and provided appropriate accommodations." *Id.* at 1–2. Because Mr. Nelson has not shown imminent, irreparable harm that will result in the absence of relief, these requests are DENIED pending full briefing and a hearing.

## II.    FACTUAL BACKGROUND

Mr. Nelson is a Washington resident. *Id.* at 2. He claims that he has cognitive disabilities stemming from long COVID. *Id.* These cognitive disabilities "substantially limit brain function, memory, concentration, and other major life activities." *Id.*

Defendants are judges and officers of Pierce County Superior Court. *Id.* at 2–3. A state civil action involving Mr. Nelson is pending before the court. *Id.* at 2. Because Mr. Nelson's claimed impairments "limit his ability to understand, remember, and respond to complex information in the context of legal proceedings[,]" he submitted a request for reasonable accommodation under the ADA with the court. *Id.* at 3. Mr. Nelson seeks 1) a temporary stay or continuance of the June 4, 2025 dispositive motion hearing; 2) an interactive meeting with the court's ADA coordinator; and 3) "auxiliary aids or services to assist with his impairments[.]" *Id.*

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 2

Mr. Nelson claims that no "interactive meeting or discussion" was ever scheduled to consider possible accommodations. *Id.* at 3–4. He claims that, even after repeated inquiries in May 2025, the court failed to offer a continuance or schedule any meetings to discuss accommodations. *Id.* On June 2, 2025, Defendant Madden emailed Mr. Nelson stating that "the June 4 hearing will not be stayed" and that "the Commissioner disagrees with your ADA assessment." *Id.* at 4 (emphasis removed).

Mr. Nelson argues that, if the hearing is allowed to proceed on June 4 without accommodation, he will be "effectively denied a meaningful opportunity to be heard due to his cognitive disabilities." *Id.* He notes that the hearing is on a dispositive motion in a civil case that will affect his "property rights and legal liabilities." *Id.* Accordingly, he asks this Court to stay the proceedings. He brings claims for relief for violation of Title II of the ADA and the Fourteenth Amendment's Procedural Due Process requirements. *Id.* at 9–10.

### III.  LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). TROs serve a limited purpose: "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. The movant must make a showing on each element of the *Winter* test. *All.*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). But "where the 'balance of hardships . . . tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

Additional requirements are imposed on TROs that are granted "ex parte," or without notice to the other party. Under Federal Rule of Civil Procedure 65(b), a TRO may be granted without notice to the adverse party if it appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). Shortly after Mr. Nelson filed his motion, the Court contacted him by email to ask if notice had been provided to the defendants. Dkt. 6. Mr. Nelson represented that he had provided copies of his complaint and TRO motion to all named defendants on the evening of June 2, 2025. *Id.* As of this writing on June 3, no appearance in this Court has been made on behalf of any defendant. For the limited purpose of this temporary relief, the Court accepts Mr. Nelson's representation that the adverse parties received notice of his motion.

### IV.   DISCUSSION

**A.   Mr. Nelson has demonstrated irreparable harm and raised serious questions about the merits.**

Here, Mr. Nelson has made a showing of immediate and irreparable harm to his rights under the ADA and to his property rights in the relevant state court action if the hearing on June 4 is allowed to proceed. *See* Dkt. 2 at 4. He explains that the "hearing's subject matter (a dispositive motion in a civil case) is critically important, potentially affecting Petitioner's property rights and legal liabilities." *Id.* And he alleges, "[w]ithout accommodations (such as more time to process information and respond, or alternative methods of participation), there is a

severe risk that [Mr. Nelson] will be unable to comprehend the proceedings in real time or adequately present his case." *Id.* Although this Court has limited information on the consequences of the scheduled hearing, Mr. Nelson has shown potential irreparable harm. If the hearing proceeds tomorrow, June 4, without any accommodations for Mr. Nelson, he may be deprived of the ability to understand legal proceedings with consequences that may not have an adequate remedy at law. On the record currently before this Court, any prejudice caused by a brief delay in the state-court hearing is minimal. *See id.* Thus, the Court finds, the balance of hardships tilts strongly in Mr. Nelson's favor.

And Mr. Nelson has shown "serious questions going to the merits" of the case. *Roman,*, 977 F.3d at 941 (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). To prove that a public program or service violated Title II of the ADA, a plaintiff must show that he: (1) is a "qualified individual with a disability"; (2) was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (3) the "exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (quoting *Weinreich v. Los Angeles County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997)).

First, Mr. Nelson has alleged that he suffers cognitive disabilities because of long COVID. Dkt. 2 at 3. The Department of Health and Human Services and the Department of Justice have co-issued guidance that long COVID is a disability under Titles II and III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"). U.S. Dep't of Health and Human Services, Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557 (July 26, 2021); *see also Muhammad v. CDCR*,

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 5

No. 2:23-CV-00756-JDP (PC), 2023 WL 3956713, at *1 (E.D. Cal. May 25, 2023) (assuming that long COVID is a disability under the ADA).

Second, Title II of the ADA "include[s] an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017). Courts are public entities required to provide reasonable accommodations under Title II. *See Tennessee v. Lane*, 541 U.S. 509, 531–34 (2004) ("This duty to accommodate is perfectly consistent with the well-established due process principle that, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard in its courts." (citation omitted)); *Duvall*, 260 F.3d at 1135.

Third, Mr. Nelson will need to show that "by reason of [his] disability, [he was] excluded from participation in or [] denied the benefits of the services, programs, or activities of a public entity[.]" *Weinreich*, 114 F.3d at 978 (quoting 42 U.S.C. § 12132). "The failure to provide [a] reasonable accommodation can constitute discrimination." *Updike*, 870 F.3d at 951 (citation modified). "To succeed on a failure-to-accommodate claim under Title II of the ADA, a plaintiff must show that a public entity failed to make reasonable modifications that would accommodate plaintiff's disability without fundamentally altering the nature of program or activity, and that the accommodation would have enabled the plaintiff to meet the program's essential eligibility requirements." *Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1256 (D. Idaho 2021) (citing *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016)).

Additionally, Title II "create[s] a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Updike*, 870 F.3d at 954 (quoting *Duvall*, 260 F.3d at 1139). "Thus, a public entity 'must consider the particular individual's need when conducting its investigation into what accommodations are reasonable.'" *Id.* (quoting *Duvall*, 260 F.3d at 1139).

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 6

Mr. Nelson has raised serious questions here as to both requirements. Mr. Nelson contends that he was denied any accommodations, Dkt. 2 at 4, without an interactive meeting or any other assessment. *Id.* at 4, 9.

Accordingly, the Court finds that Mr. Nelson has shown a likelihood of irreparable harm if the hearing proceeds. And Mr. Nelson has shown "serious questions going to the merits" of the case. *Roman*, 977 F.3d at 941 (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

**B.    The Court has authority to issue the TRO.**

With respect for principles of federalism and separation of powers, the Court notes that a TRO from a federal court staying state court proceedings is rare. *See Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630 (1977). Yet "to the extent state [] actions run afoul of federal law, they can be held unlawful by federal courts." *Selene*, 514 F. Supp. 3d at 1254 (first citing *McCulloch v. Maryland*, 17 U.S. 316 (1819); and then citing *Ex Parte Young*, 209 U.S. 123 (1908)). And the Ninth Circuit has held that suits for prospective injunctive relief under the ADA are allowed under the framework of *Ex Parte Young*. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189 (9th Cir. 2003).

Additionally, the Anti-Injunction Act, with limited exceptions, prohibits a federal court from enjoining the court or a party in a state-court proceeding from prosecuting the suit, complying with, or enforcing state-court orders. *Vendo Co.,* 433 U.S. at 630; *Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1315 (9th Cir. 2010). "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the [Supreme] Court [of the United States]." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 287 (1970).

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 7

This case may fall into one of those narrow exceptions: injunctions expressly authorized by Congress. 28 U.S.C. § 2283. For example, civil rights actions under 42 U.S.C. § 1983 generally fall within the first exception to the Anti–Injunction Act because "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, . . . to protect the people from unconstitutional action under color of state law[.]" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (citation omitted); *see also Goldie's Bookstore, Inc. v. Super. Court of State of Cal.*, 739 F.2d 466, 468 (9th Cir. 1984)). However, the first exception comes into play only when a statute "clearly creating a federal right or remedy enforceable in a federal court of equity" could "be given its intended scope only by the stay of a state court proceeding." *Mitchum*, 407 U.S. at 238 (citing cases).

Thus, the Court's TRO remains narrow, staying only the June 4, 2025 hearing pending further briefing and an opportunity for a hearing with all parties. In future hearings or motions practice, the parties should be prepared to address this Court's power to enjoin pending state-court civil proceedings based on violations of the ADA. The Court emphasizes that its rulings in this temporary order are provisional and may be revised after hearing from all sides.

### V.    CONCLUSION

Therefore, IT IS HEREBY ORDERED that:

- Defendants are ENJOINED from proceeding with the dispositive motion hearing scheduled for June 4, 2025 in Pierce County Superior Court Case No. 25-2-01460-1. This order expires on June 17, 2025 unless extended by further order of this Court;

- Mr. Nelson's requests for temporary injunctive relief are otherwise DENIED but may be renewed at later stages of this case;

- Mr. Nelson must provide copies of this Order to all Defendants;

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 8

- A hearing on whether this TRO should be extended will be scheduled within 14 days of this Order;

- The Court will also hold a remote status conference promptly after Defendants appear to discuss scheduling the TRO hearing and accommodating Mr. Nelson's participation in the hearing.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 3rd day of June, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING TEMPORARY RESTRAINING ORDER - 9